UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHERINE PEPPER and RICHARD PEPPER,

    Plaintiffs,

v.

JC PENNEY CORPORATION, INC., a Delaware corporation; and ONE OR MORE JOHN DOE DEFENDANTS,

    Defendants.

CASE NO. C07-1781-JCC

ORDER

This matter comes before the Court on Defendant J.C. Penney Corporation's ("J.C. Penney") Motion for Summary Judgment (Dkt. No. 17), Plaintiffs' Response in opposition (Dkt. No. 20), Defendant's Reply (Dkt. No. 22), and Defendant's Motion to Supplement the Summary Judgment Record (Dkt. No. 25). The Court has carefully considered these papers, together with their supporting declarations and exhibits, and has determined that oral argument is not necessary. The Court hereby GRANTS the motion for summary judgment and rules as follows.

**I.    BACKGROUND**

On October 29, 2005, Plaintiff Katherine Pepper received a pedicure at the J.C. Penney salon at the Bellevue Square Mall in Bellevue, Washington. (Pepper Decl. ¶ 2 (Dkt. No. 21 at 1).) Plaintiff was a frequent customer of the salon and had received pedicures from the same nail technician, Elena Petrovna

ORDER – 1

Clark, every week or every other week for about two years because it was relaxing and Ms. Clark "did a wonderful job." (*Id.*; Pepper Dep. 26:7–21 (Dkt. No. 18 at 8).) That day, however, after Ms. Clark soaked Plaintiff's feet in the foot bath and began trimming her toe nails and cuticles, she nicked Plaintiff's left toe with a pedicure instrument. In her deposition, Plaintiff describes the incident as follows:

> [Ms. Clark] put my feet into the tub, and then she took my feet out and she started cutting my toenail, and I said to her that that toe felt a bit sore. So she was cutting it a bit, and then she took one foot out—that foot out first, my left foot, and then she did that. Then she put my foot back into the tub. Then . . . she took my right foot out, and she trimmed. Then she put my right foot back in, and took my left foot out again, and she was trimming and doing the cuticles some more. I felt her nick me on the toe, and I said "ouch" because it really hurt. She put my foot back in.

(Pepper Dep. 29:9–19 (Dkt. No. 18 at 10).) In a later declaration[1] filed with the Court, Plaintiff also asserts that after Ms. Clark nicked her left toe and returned her left foot to the basin, Ms. Clark began working on her right foot and nicked a toe on that foot, as well. (Pepper Decl. ¶ 6 (Dkt. No. 21 at 2).)

The next morning, when Plaintiff awoke, her left big toe "was hurting and in pain" and had pus. (Pepper Dep. 34:7–8 (Dkt. No. 18 at 4).) She went to an urgent care clinic that day and learned that the toe was infected. (*Id.* at 34:19–21.) Plaintiff believes that the cause of the infection was Ms. Clark's returning Plaintiff's left foot to the foot bath after the nick occurred. (*Id.* at 46:19–23.) Plaintiff asserts that, in addition to seeing the urgent care doctor on October 30, 2005, she saw her regular doctor, Dr. Sashibindu Amara, at Virginia Mason Medical Center, on October 31, 2005, so that the toe infection could be treated with intravenous antibiotics. (Pepper Decl. ¶ 9 (Dkt. No. 21 at 3).) She states that she was hospitalized because of her toe infection from October 31 through November 2, 2005, and again from November 17–19, 2005, and from December 9–12, 2005. (*Id.*) She also contends that after she was treated with intravenous antibiotics for her infected toe, she

> developed numerous gastric complaints including severe abdominal pain and diarrhea. This diarrhea was unlike any diarrhea I had suffered from before. It has completely disabled me.

---

[1] In its Reply, Defendant seeks to strike the Pepper Declaration because it allegedly contradicts prior deposition testimony and discovery responses. (Reply 5 (Dkt. No. 22).) The Court finds that the Declaration does not prejudice Defendant herein, and declines to strike it.

ORDER – 2

> I worked full time before the pedicure. I very seldom took sick leave. I have not been able to work since the pedicure. I can not travel.

(*Id*. at ¶ 13.) Plaintiff claims that as a result of the infection, she suffered "[s]evere, permanent and debilitating injuries" and seeks damages for medical expenses, lost wages, physical and mental pain, loss of enjoyment of life, increased susceptibility to additional injuries, among other damages, totaling over $75,000.00. (Compl. 3 (Dkt. No. 2 at 14); Resp. 12 (Dkt. No. 20).) She proceeds on a negligence theory against Defendant J.C. Penney. (Compl. 5, 6 (Dkt. No. 2 at 13).)

Defendant highlights Plaintiff's long medical history predating the toe infection, including erratic diabetes control and gastrointestinal issues, including diarrhea. (Mot. 3–5 (Dkt. No. 17).) Defendant relies upon Plaintiff's medical records and the deposition testimony of Dr. Amara and Plaintiff's podiatrist, Dr. Heit, as well as Plaintiff's own testimony, in arguing that Plaintiff cannot establish that the pedicure was the proximate cause of the infection. (*Id*. at 7.) In addition, Defendant argues that Plaintiff's complaint must be dismissed as a matter of law because she cannot establish the applicable standard of care since she failed to timely disclose an expert to testify on that subject. (*Id*. at 6–7.)

## II. ANALYSIS

### A. Supplementing the Summary Judgment Record

As a preliminary matter, Defendant asks the Court to allow it to supplement the summary judgment record with evidence that it obtained after it filed its Reply brief. (Mot. to Supplement Record (Dkt. No. 25).) The evidence at issue is Plaintiff's medical record from her urgent care appointment the day after the pedicure. In the medical record, the physician's notes indicate that Plaintiff's injury, a left big toe infection, was "from week[s][2] ago when she hit the dresser and chipped the toenail." (Dkt. No. 26 at 11.) Defendant contends that it could not have obtained this evidence at the time it filed its summary judgment motion because Plaintiff had been unable to remember which urgent care facility she had visited

---

[2] The doctor's notes are handwritten and the Court cannot discern whether the note states that the injury was from "week ago" or "weeks ago." (Dkt. No. 26 at 11.)

ORDER – 3

that day. (Mot. to Supplement Record 2 (Dkt. No. 25).) Defendant states that on September 25, 2008, approximately three weeks after Defendant's reply brief was due, Plaintiff finally confirmed that she received treatment at Meadowbrook Urgent Care, and upon receiving this information, Defendant promptly retrieved the Plaintiff's medical record.

Although the Federal Rules of Civil Procedure do not specify under what conditions a summary judgment record may be supplemented after the noting date has passed but before the motion has been ruled upon, both the Federal Rules and the Local Rules authorize the Court to grant relief from judgments already made based on newly discovered evidence that, with reasonable diligence, could not have been discovered earlier. *See* FED. R. CIV. P. 60(b)(2); Local Rule W.D. Wash. CR 7(h) (providing that motions for reconsideration may be granted on a "showing of new facts . . . which could not have been brought to [the Court's] attention earlier with reasonable diligence"). In addition, the Local Rules permit motions for relief from a deadline. Local Rules W.D. Wash. CR 7(d)(2)(A).

Plaintiff did not timely respond to Defendant's motion to supplement the record. *See* Local Rules W.D. Wash. CR 7(d)(2) (setting the due date for opposition papers to this kind of motion for three judicial days before the noting date). The Local Rules provide that "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rules W.D. Wash. CR 7(b)(2). Without having received any opposition from Plaintiff, the Court finds that Defendant could not have discovered this evidence earlier with reasonable diligence and GRANTS Defendant's motion to supplement the summary judgment record with the proffered evidence.

**B.    Summary Judgment**

   **1.    Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec.*

ORDER – 4

*Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party meets this initial burden, then the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a summary judgment motion, . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

**2. Discussion**

The elements of a negligence claim are "the existence of a duty to the plaintiff, breach of that duty, and injury to the plaintiff proximately caused by the breach." *Sheikh v. Choe*, 128 P.3d 574, 577 (Wash. 2006). Under Washington law, "[t]he twin elements of proximate cause are cause in fact, the 'but for' consequences of an act, and legal causation, whether liability should attach as a matter of law." *Miller v. Likins*, 34 P.3d 835, 837 (Wash. Ct. App. 2001). To establish cause in fact, the plaintiff must show by a preponderance of the evidence that the harm suffered would not have occurred but for an act or omission of the defendant. *Joyce v. State, Dep't of Corr.*, 119 P.3d 825, 833 (Wash. 2005) (explaining that "[t]here must be a direct, unbroken sequence of events that link the actions of the defendant and the injury to the plaintiff").

In addition, "to survive summary judgment, the plaintiff's showing of proximate cause must be based on more than mere conjecture or speculation." *Miller*, 34 P.3d at 837. "The cause of an accident may be said to be speculative when, from a consideration of all the facts, it is as likely that it happened

ORDER – 5

from one cause as another." *Jankelson v. Sisters of Charity of House of Providence in Territory of Wash.*, 136 P.2d 720, 725 (Wash. 1943). In other words:

> [I]f there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred.

*Marshall v. Bally's Pacwest, Inc.*, 972 P.2d 475, 479 (Wash. Ct. App. 1999) (*citing Gardner v. Seymour*, 180 P.2d 564, 569 (1947)).

Plaintiff alleges that the cause in fact of the infection was Ms. Clark's placing Plaintiff's nicked left foot back in the foot bath during the pedicure. (Pepper Dep. 46:19–23 (Dkt. No. 18 at 16); Resp. 5 (Dkt. No. 20).) However, the treating physician's notes from the day after the pedicure state that Plaintiff was seen at Meadowbrook Urgent Care in North Bend, Washington, for a left big toe infection with pus coming out, and that Plaintiff's injury was "from week[s] ago when she hit the dresser and chipped the toenail." (Dkt. No. 26 at 11.) In addition, Plaintiff's own witness, her podiatrist, testified that stubbing her toe could have caused the infection:

> Q: So you're saying—or would it be fair to say then that it's your opinion that there has to be some form of trauma to the toe in order to cause the infection?
>
> A: In this case, yes.
>
> Q: And would it be fair to say then that the reason you're relating it to the pedicure is because that's the only event that she knows of or anybody knows of?
>
> A: That's right. That's right. So the question, you know, is it possible that she could have earlier that day on the 29th kicked a wall and stubbed her toe and that be the cause, sure, it's possible, but that's not what she told me.

(Heit Dep. 29:4–17 (Dkt. No. 23 at 10).)

Plaintiff posits that "[t]he only evidence before the court on causation of [Plaintiff's] injuries is the evidence of her treating doctors that the pedicure was the cause of her infected toe[.]" (Resp. 12 (Dkt. No. 20 at 12).) However, both Dr. Amara and Dr. Heit testified that the reason they connected the infection to the pedicure was Plaintiff's self-reports. (*See* Amara Dep. 36:14–37:15 (Dkt. No. 23 at

ORDER – 6

16–17) ("Q: What is it that . . . led you to believe that the infection was related to the pedicure as opposed to any soreness prior to the pedicure? . . . A: I do believe somewhere down the road . . . when I had discussions with [Plaintiff], the mention of the pedicure . . ."); Heit Dep. 29:9–30:4 (Dkt. No. 23 at 10–11) ("Q: And would it be fair to say then that the reason you're relating it to the pedicure is because that's the only event that she knows of or anybody knows of? A: That's right. . . . she did say that, that she got it at a pedicure salon, so. . . Q: And again, to go back to my earlier question, that was based on her self-report; is that right? A: Hm-hmm.") In light of the supplemented record, the Court is not persuaded that this medical evidence is enough. Plaintiff's deposition testimony that her toe was already sore before she was nicked by Ms. Clark makes it even more plausible that the toe was somewhat infected before the pedicure. (Pepper Dep. 29:9–19 (Dkt. No. 18 at 10).)

From all the evidence in the record, there are at least two potential causes in fact resulting in the infection, only one of which could result in Defendant's liability. The Court finds that Plaintiff has not carried her burden of demonstrating by a preponderance of the evidence that it is more likely than not that the infection was caused by the pedicure. Accordingly, the Court GRANTS Defendant's motion and DISMISSES Plaintiff's case at summary judgment.[3]

---

[3] Plaintiff also argues that the doctrine of *res ipsa loquitur* applies, such that she need not prove specific acts of negligence and the jury may infer negligence because the injury is of a kind that would not ordinarily happen in the absence of someone's negligence. (Resp. 7 (Dkt. No. 20).) Washington law recognizes three situations in which an injury supports a reasonable inference of negligence: "(1) when the act causing the injury is so palpably negligent that it may be inferred as a matter of law, *i.e.*, leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries." *Robison v. Cascade Hardwoods, Inc.*, 72 P.3d 244, 252 (Wash. Ct. App. 2003). The Court does not find that the injury here, an infection caused, as Plaintiff asserts, by a nicked toe in the context of a pedicure, meets any of these standards. The act of nicking a toe and placing it in a foot bath during a pedicure is not "palpably negligent" when compared to leaving a foreign object in the body after surgery. Nor does the medical testimony by Plaintiff's doctors, as described above, create an inference that negligence caused the injuries. Further, general experience does not teach that the infection, or the nick ostensibly leading to it, would not be expected without negligence. Rather, infections commonly occur without negligence, and inadvertent slips causing injury can occur without negligence. *See, e.g.*, *A.C. ex*

ORDER – 7

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant J.C. Penney Corporation's Motion for Summary Judgment (Dkt. No. 17). Accordingly, Plaintiffs' claims are hereby DISMISSED in their entirety, and the Clerk is DIRECTED to close the case.

DATED this 16th day of October, 2008.

_____
John C. Coughenour
UNITED STATES DISTRICT COURT

---

*rel. Cooper v. Bellingham Sch. Dist.*, 105 P.3d 400, 405 (Wash. Ct. App. 2004) (holding that an injury caused by the inadvertent "loss of grip on a swinging bat used to strike a piñata, without more, is insufficient to support the giving of a res ipsa loquitur instruction"). Accordingly, the Court will not permit Plaintiff to survive summary judgment on the basis that *res ipsa loquitor* spares Plaintiff of having to prove specific acts of negligence.

ORDER – 8